IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Life Insurance Company, | ) | C/A No.: 3:11-314-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | FINDINGS OF FACT AND |
| vs. | ) | CONCLUSIONS OF LAW |
| | ) | |
| Marilyn Saddler, Monique L. Kelly, Sheena G. Wilcher, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

I.  FACTUAL AND PROCEDURAL BACKGROUND

This is an interpleader action involving competing claims to a $35,000 life insurance policy issued to Judith Hilton Lee, who died on December 9, 2010. At the time of her death, Ms. Lee had in force the aforementioned life insurance policy issued through her employer, Community Housing Partners, and underwritten by the plaintiff in this action, Companion Life Insurance Company, an insurance company duly existing and organized pursuant to the laws of South Carolina.

Following Ms. Lee's death, Companion learned that two of the beneficiaries of the policy, Monique Kelly and Sheena Wilcher, both of Long Beach, California, contested a change of beneficiary designation allegedly made by Ms. Lee shortly before her death.

Faced with competing claims to the policy, the plaintiff initiated this interpleader action, seeking permission to pay the total policy proceeds into the Registry of the court and further seeking to discharge any further claims by any of the potential beneficiaries. Jurisdiction in this court is proper because the policy at issue was issued as part of an

1

employee benefit plan, thereby justifying jurisdiction under the Employment Retirement Income Security Act (ERISA) 29 U.S.C. § 1001 et seq.

Shortly after this action was instituted, Companion formally moved for permission to pay the policy proceeds into the court's Registry and be discharged. The court ultimately granted the motion, dismissed Companion from the case, and advised the three defendants that it would be in their best interest to retain counsel to represent them in this action. At an early status conference, the court also inquired of the parties and determined that the only issue presented in the case was the question of whether the signature on the change of beneficiary form was a forgery. In other words, the other two potential claimants, Ms. Kelly and Ms. Wilcher, do not contend in this action that Ms. Saddler practiced undue influence upon Ms. Lee to have her change her beneficiary designation prior to her death.

Notwithstanding the court's strong recommendation for attorney representation, no party to this action retained counsel, and the court set the matter for a bench trial on November 9, 2011. Shortly before the scheduled trial, the court once again advised the defendants in this action that they needed to secure the services of an attorney. However, they once again indicated that they intended to represent themselves at the bench trial.

The bench trial was conducted as scheduled on November 9, 2011. Present at the hearing were the three potential beneficiaries to the policy and no other witnesses. As will be seen below, the court, on its own initiative, sought input from two additional witnesses, both of which have been helpful in resolving the factual dispute.

After receiving the testimony, carefully considering all the evidence, weighing the credibility of the witnesses, reviewing the exhibits and briefs, and studying the applicable law, this court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

## II.  FINDINGS OF FACT

1.  Judith Hilton Lee died a resident of the State of Florida on December 9, 2010. At the time of her death, Ms. Lee was a covered insured under a basic group life insurance policy (Policy No. 367-25-45174-000) issued by Companion Life Insurance Company through Lee's employer, Community Housing Partners. When the policy was issued on June 23, 2008, the named beneficiary was Lee's husband, Eddie Lee. On August 13, 2009, Ms. Lee submitted a change of beneficiary form and changed the beneficiary from her then-husband to defendant Sheena G. Wilcher, one of her two daughters. The validity of this change of beneficiary is not contested in this litigation.

2.  On November 7, 2010, Lee allegedly executed another change of beneficiary form adding defendants Monique Kelly (Lee's other daughter) and Marilyn Saddler (Lee's college roommate and longtime friend and caregiver), indicating Lee's desire that the three beneficiaries (Wilcher, Kelly, and Saddler) share equally in the policy proceeds. It is the November 7, 2010 change of beneficiary form that is challenged in this litigation.

3. In their *pro se* papers filed with the court, Kelly and Wilcher initially took the position that Lee was not competent to make a change of beneficiary on November 7, 2010, prompting Saddler to respond with letters from two of Lee's treating physicians indicating that Lee was, in fact, competent in November 2010. Eventually, Kelly and Wilcher abandoned their competency challenge and indicated their intent to go forward to an evidentiary hearing solely on the question whether the signature on the disputed change of beneficiary form was legitimate.

4. At the bench trial, the court received testimony from all three defendants regarding Ms. Lee's diagnosis of cancer and the events which transpired following the cancer diagnosis leading up to her death.

5. The testimony showed that Ms. Lee enjoyed a normal family relationship with both of her daughters. Significantly, both of the daughters (Kelly and Wilcher) took the position that the disputed change of beneficiary was a forgery. In other words, Kelly, the daughter whose name was added as a beneficiary along with Saddler in the disputed change, sided with her sister in arguing that the change was a forgery. Moreover, Kelly made it clear, in her correspondence with the court, that she did not desire any proceeds of the life insurance policy and that it was her firm belief that her mother intended to leave the entire policy proceeds to Lee's other daughter, Wilcher.

6. According to testimony, both daughters moved to Florida for periods of time to help care for their mother after she was diagnosed with cancer. Additionally, Wilcher was on Lee's bank accounts and assisted her mother with her finances while she was sick. After

Kelly and Wilcher learned from Saddler that Lee's doctors said she had two weeks to a month to live, the sisters moved back to Florida to take care of their mother in the final days of her life.

7.  The testimony also indicated that Saddler was a trusted, lifelong friend of the decedent, who had roomed with the decedent in college, and at various times thereafter. Moreover, when Lee moved to New York to attempt to obtain additional treatment for her spreading cancer, it was Saddler who accompanied Lee to New York and provided her primary care while in New York. The last cancer treatment occurred on November 8 or November 9, when doctors concluded that any further attempts at treatment would be futile. On approximately November 16, 2010, Lee returned to Florida and passed away early the following month.

8.  The disputed change of beneficiary document (Court's Exhibit No. 1), consists of two pages. The first page is a preprinted form generated by Companion Life that apparently served to allow a policyholder to document several changes to existing policies. Specifically, at the top of page 1, there are blocks to be checked for the following entries:

    ❒   New Employee                ❒   Change Address
    ❒   Add/Increase Coverage       ❒   Change Dependent Coverage
    ❒   Change Beneficiary          ❒   Change Class or Status

9.  On the particular form in question, the block for "Change Beneficiary" is checked. Below that, the essential information regarding the life insurance policy at issue is given. In the blank on the form entitled "Beneficiary for Employee Coverage/Relationship," the entry "see attached" is written in. Regrettably, Ms. Lee signed

5

the bottom of page 1 of the form on the wrong line. The correct place for the signature for making any of the changes itemized above was indicated with an "x" mark in the left margin, but Ms. Lee did not sign near the "x" mark. Instead, she signed in a block *below* the proper signature line on a portion of the form where employees who are entitled to group coverage under the Companion plan can elect to refuse group insurance. Lee's signature appears in this portion of page 1, bearing the date of November 7, 2010. No witness signature lines were provided for witnesses to the insured's signature.

10.     Page 2 of the change of beneficiary form is not a preprinted form. Rather, it is a typewritten document reading, in pertinent part, "I Judith Hilton (Lee) am writing instruction [sic] for my Life Insurance distribution [sic] my insurance should be distributed as follows: Beneficiaries are listed for distribution by the percentages of 33 1/3 for each beneficiary." There then follows a listing of the three defendants to this action, which are Kelly, Wilcher, and Saddler. Beneath each name is the appropriate date of birth and current address, and to the right of each name is the designation "33 1/3 percent" and the relationship to the defendant. In Ms. Saddler's case, the relationship is designated as "sister/best friend." It is undisputed that Saddler is not Lee's biological or legal sister.

11.     Page 2 of the designation form bears a signature purporting to be that of Lee. The typewritten page also bears two different dates. At the top, the typewritten date is "November 10, 2010." At the bottom, the handwritten date is "11/11/10."

12.     At the bench trial, all three defendants to this action testified regarding their relationship with the decedent and gave their opinions relating to the validity of the disputed

6

signatures. They also testified at length regarding their relationship to the decedent which, as noted above, the court finds to be normal in all respects.

13.     Because the genuineness of the signatures on the change of beneficiary form was the only factual dispute in this case, the parties submitted to the court before the trial and during the trial exemplar signatures (i.e., signatures that all parties acknowledged to be legitimate signatures of Ms. Lee such as her driver's license, medical discharge forms, etc.). The court accepted these exemplar signatures and marked them as Court's Exhibits 2–9 and 11–13. Because Kelly and Wilcher proposed to the court that Saddler forged their mother's signature, the daughters also submitted a form where Saddler had signed her own name for Lee on a hospital discharge notice. The court accepted this document and marked it Court's Exhibit 10.

14.     At the conclusion of the hearing, the court expressed its desire to hear testimony regarding exactly how the request for the change of beneficiary had been communicated to Companion Life Insurance. After questioning the parties to the case, the court learned that Nancy Snead, Human Resources Manager with Community Housing Partners, was the individual with whom Lee dealt in changing policy beneficiaries. The court expressed its desire to hear testimony from Ms. Snead and indicated that it would adjourn the hearing, secure Snead's attendance by way of a subpoena, and resume the hearing at a later date. This, of course, presented logistical problems to the litigants because the parties had driven to South Carolina for the bench trial from distant locations—the daughters having traveled from California and Saddler having traveled from New York. When the parties

were reluctant to agree to a continuance of the trial, the court suggested an alternative: The court proposed that Ms. Snead be contacted by way of telephone, with transmission into the courtroom via the court's audio system so that Snead could testify live, and be subject to cross-examination, over the telephone. The court explained to the parties that it was highly unusual to proceed in this fashion, but that the court was prepared to do so if the parties preferred that approach, as opposed to continuing the hearing and being required to travel back to South Carolina again for the resumed hearing. All parties agreed to the court's proposal.

15.     Pursuant to the agreement, Ms. Snead was contacted by telephone and patched into the courtroom audio system. She testified in response to questions put to her by the court and also to followup questions submitted by all three litigants. Surprisingly, with no advance warning of the court's phone call, Snead was able to retrieve her records and jar her memory regarding the events surrounding the change of beneficiary in November 2010. Though Snead could not remember who she spoke to first, she did recall speaking to both Lee and Saddler. Snead testified that during her conversation with Lee, Lee did not say that Saddler was her sister, nor did she request the change of beneficiary form. According to Snead, it was Saddler who requested the blank form. In accordance with the request, Snead sent the change of beneficiary form, described above, to Lee at the fax number indicated by Saddler in the phone conversation. At trial, Saddler denied talking to Snead except to give Snead the number to fax the form to and indicated that Lee herself had participated in the conversation about changing her insurance beneficiaries. After hearing the testimony of both

Saddler and Snead, the court resolves this credibility adverse to Saddler and accepts Snead's version of the conversation as correct.

16.     At the conclusion of all of the testimony, but before adjourning court, the court briefly reviewed the disputed signatures and compared them to the exemplar signatures. The court's initial impression was that the signature on page 1 of the disputed change of beneficiary form was legitimate, whereas the signature on page 2 of the form was a forgery. Without announcing its tentative conclusions to the parties, the court suggested that the parties agree to allow the court to employ the services of a forensic document examiner who could examine the disputed and the exemplar signatures and render an expert opinion regarding the factual issue presented in this case. During a recess, the court conferred with Marvin H. Dawson, a forensic document examiner in South Carolina who is used on a frequent basis by the Federal Bureau of Investigation, the Secret Service, and other federal law enforcement agencies. The court briefly explained to Dawson the services he might be expected to render, and after being advised of his fee for such a venture, the court proposed to the litigants that they authorize the court to employ Dawson as the court's expert, paying him his agreed upon fee ($520) out of the life insurance proceeds being held in the court's Registry. All three parties readily agreed to this proposal.

17.     The court then questioned the parties as to whether they wished to resume the hearing upon receipt of the opinion rendered by Dawson. Again, this would have required an expensive return to South Carolina for all three litigants, and the parties indicated that they were satisfied with the court providing the signatures to Dawson for comparison and

9

allowing Dawson to render a written report to the court on his findings. After thoroughly explaining to the litigants their right to cross examine any witness who testified in the case, all parties agreed to waive any cross examination rights they might have to the Dawson report.

18.    As agreed, the court provided the signatures to Dawson, who rendered a comprehensive written report on January 5, 2012. Dawson's report confirms this court's initial suspicion that the signature on page 1 of the disputed change of beneficiary form is legitimate and that the signature on page 2 of the same document is a forgery. When the report was received, the court provided written copies of Dawson's Report to all litigants and advised them that they would have 14 days within which to comment on the report.

Within the 14 days allowed, Sheena Wilcher wrote to generally support the examiner's conclusions. Marilyn Saddler, the defendant adversely affected by the examiner's conclusion, filed a document wherein she suggests that at times, Ms. Lee's hands were "very shaky." She also asks that the court get a second opinion as to handwriting.

The court must decline Ms. Saddler's request for a second opinion. The court finds Mr. Dawson's analysis to be thorough and complete and in accordance with this court's tentative conclusion regarding the genuineness of the signatures in question. For this reason, the request for an additional expert opinion is denied.

19.    After reviewing all the evidence in this case, including the testimony of the three witnesses at the evidentiary hearing, the disputed document, along with the exemplar signatures of Ms. Lee and the report by Dawson, the court finds that the signature at the

bottom of page 1 of the change of beneficiary form is Lee's signature, whereas Lee's signature on the bottom of page 2 of the same form is a forgery.

### III. CONCLUSIONS OF LAW

The court concludes, pursuant to Fed. R. Civ. P. 52, that

1. If the court concludes that the November 7, 2010 change of beneficiary request is invalid, the entire proceeds of the policy will be payable Sheena J. Wilcher, one of the two daughters of the decedent, Ms. Lee. Wilcher was the sole beneficiary on the policy at the time of the disputed policy change. Payment of the entire policy proceeds to Wilcher meets with the approval of Kelly, who indicated in written correspondence with the court and at the bench trial that she desires for her sister to receive all of the proceeds.

2. "Insurance policies are subject to general rules of contract construction." *Sloan Constr. Co., Inc. V. Cent. Nat'l Ins. Co. of Omaha*, 236 S.E.2d 818, 819 (S.C. 1977). In construing a document such as the beneficiary change at issue in this case, it is well settled that the court is required to ascertain the intention of the parties from the four corners of the document. *See McPherson v. J.E. Sirrine & Co.*, 33 S.E.2d 501, 510 (S.C. 1945) (quoting 17 C.J.S., *Contracts* § 296) ("'In construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument.'"). Furthermore, "where [an insurance] policy prescribes a plan for changing the beneficiary, there must be at least a substantial compliance therewith." *Dryman v. Liberty Life Ins. Co.*, 57 S.E.2d 163, 164 (S.C. 1950) (citations omitted).

3. The court determines that the forgery on page 2 of the disputed change of beneficiary form renders the entire attempt in November 2010 to change the beneficiary null and void. An argument could be made that because the signature on page 1 is genuine and because page 2 purports to be incorporated by reference in to page 1, then the change is valid. The court is persuaded otherwise. To begin with, as noted above, it was Saddler, not Lee, who called Lee's former employer to request that the change of beneficiary form be sent. This certainly implies that Saddler was intimately involved in the events leading up to the change of beneficiary.

4. As noted above, the genuine signature on page 1 does not command a change of beneficiary; instead, it purports to be a declining of life insurance altogether. Thus, page 1 is a document of absolutely no force and effect.

5. Page 2, the operative portion of the change of beneficiary form bears a signature that this court has determined to be illegitimate. Because Lee never signed the operative portion of the form, the change of beneficiary fails and the court finds that Ms. Wilcher is sole beneficiary of the policy.

ORDER AND CONCLUSION

For the foregoing reasons, the court hereby orders that the Clerk of this court disburse from its Registry all funds deposited by Companion Life Insurance Company, together with accrued interest thereon, minus the Clerk's fee for handling the funds as authorized by the Judicial Conference of the United States and as set by the Director of the Administrative Office of the United States Courts, and minus the sum of $520 which has previously been

dispersed to pay the expert witness fees of Marvin Dawson.

The parties are hereby advised that any party wishing to appeal this court's decision must file a notice of appeal with the Clerk of this court within thirty days of the entry of this order. If an appeal is taken, that portion of this order authorizing the disbursement of funds shall be stayed until the disposition of the appeal.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

January 26, 2012
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge